■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WALTER KEMP, Appellant.—Judgment, Supreme Court, New York County, entered March 30, 1976, convicting defendant of three counts of murder in the second degree and one count of possession of a weapon in the third degree is unanimously reversed, on the law, motion to suppress statements granted and the case is remanded for a new trial. As the result of a police radio call, the investigating officer arrested defendant for possession of a gun which ballistic tests later revealed to have been a murder weapon. An officer gave defendant the *Miranda* warning while in the police car en route to the police precinct. At the precinct defendant was again given the *Miranda* warning and he stated that he wanted to speak to his lawyer. A telephone call revealed that the firearm was stolen from a housing authority officer, along with his shield and I. D. card. After defendant stated that he did not have the shield and I. D. card, he was strip-searched. On completion of this search, defendant reminded the officer that he didn't have the shield and that he just bought the gun. The officer queried defendant as to the circumstances of the purchase and learned when and where the firearm was purchased, and a description of the seller. In addition, the defendant told the officer that he would not have had the firearm in his possession were it not for a friend who was in trouble and whom he was going to help. After a hearing to suppress the defendant's statements, the court found the statements voluntary and allowed them to be used by the prosecution. In *Miranda v Arizona* (384 US 436, 474), in order to assure that statements obtained in the course of custodial interrogation were truly the product of free choice there were erected certain safeguards and it was stated "If the individual states that he wants an attorney, the interrogation must cease until the attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent." Likewise, in *Michigan v Mosley* (423 US 96, 110, n 2), the court said "the accused having expressed his own view that he is not competent to deal with the authorities without legal advice, a later decision at the authorities' insistence to make a statement without counsel's presence may properly be viewed with skepticism." (See, also, *People v Grant,* 45 NY2d 366; *People v Clark,* 45 NY2d 432; *People v Munlin,* 45 NY2d 427.) Clearly then, the police did not scrupulously honor the defendant's right to counsel by renewing the interrogation after he had made known his desire for counsel. The *Miranda* case is unambiguous in that interrogation must cease until the attorney is present. The statements which defendant complains of as not having been suppressed, were used by the prosecutor to show that the defendant, in trying to establish an alibi, had actually destroyed his credibility. The People, on summation, had emphasized the contradictory statements made by defendant to two different police officers. Under the circumstances then, it would appear that the court's failure to suppress the statements which were later used as evidence against the defendant, could have resulted in a guilty verdict. In considering whether the error was harmless error we are constrained to be guided by the determination in *Fahy v Connecticut* (375 US 85, 86-87) when the court held the error to be not harmless under the Federal test if "there is a

reasonable possibility that the [error] might have contributed to the conviction." (See, also, *People v Crimmins,* 36 NY2d 230; *Chapman v California,* 386 US 18.) Concur—Murphy, P. J., Lupiano, Evans, Lane and Sullivan, JJ.