COMMONWEALTH *vs.* TYSON K. KING. August 25, 1982. On November 11, 1980, the defendant shot and wounded a woman with whom he had been having a relationship that was described by one witness as "stormy" and "tumultuous." He then fled to Latham, New York, where he was apprehended by the New York State Police. The defendant was returned to Massachusetts, and he was indicted, tried, and convicted on charges of armed assault with intent to murder and carrying a firearm without a firearms identification card. His appeal concerns statements he made to the New York State Police at the time of his arrest.

1. The defendant argues that New York State Trooper Thomas Martin violated the spirit, if not the letter, of *Miranda* v. *Arizona*, 384 U.S. 436, 467-473 (1966), in advising him of his legal rights. He claims that the oral and written Miranda warnings given to him by Martin were rendered "ineffective" and "inadequate" by Martin's response to his question whether any statement he made could be used against him in Massachusetts. Martin testified that when the defendant put the inquiry to him, he told him that "if he gave me a statement it would be here and available to the Massachusetts authorities if they could use the statement, which I also stated to him, was not usable in the State of New York because of our laws,"[1] and that "I couldn't give him a direct answer because I didn't know Massachusetts law."

The defendant claims that Martin's statements concerning the law of Massachusetts were deceptive and misleading in much the same manner as those at issue in *Commonwealth* v. *Dustin*, 373 Mass. 612 (1977). There

---

[1] See *People* v. *Settles*, 46 N.Y.2d 154 (1978); *People* v. *Samuels*, 49 N.Y.2d 218 (1980) (where an indictment or complaint has been returned or filed, the right to counsel may be waived only in the presence of counsel). Compare *Commonwealth* v. *Frongillo*, 359 Mass. 132, 136-137 (1971).

the defendant, after being advised by two attorneys to remain silent, asked the officer, "If I tell you something about the incident, will I be admitting my guilt?" and the officer responded that "[y]ou are not on the stand and you are not under oath. You can tell me anything you want to." *Id.*, at 613. The court suppressed the defendant's statements because the officer's response "carried an implication" that the statements could not be used against the defendant and "[t]his was directly contrary to the required Miranda warning that anything the defendant said could and would be used against him in court." *Id.*, at 615. Here the defendant was told that he had the right to remain silent and to speak with an attorney, any statement he made "would be here and available to the Massachusetts authorities" should they be able to use it under their laws. We see no "implication, inveiglement or subtlety," *id.*, at 615, diluting the correctly given Miranda warnings by reason of Martin's expression of inability to advise the defendant of the legal consequences in Massachusetts of his decision to waive his rights. See *Commonwealth* v. *Lee*, 10 Mass. App. Ct. 518, 528-529 (1980).

2. At the time of his arrest, the defendant told Martin that he intended to put forward an insanity defense. The defendant put his criminal responsibility in issue at trial, and Martin related the defendant's statement to the jury. The following day, and after the Commonwealth had rested, the defendant moved at side bar to strike the statement because it had not been disclosed to him as required by Mass.R.Crim.P. 14(a)(1), 378 Mass. 874 (1979). The judge allowed the motion but failed to advise the jury that the statement had been struck and that it was to be disregarded. Defense counsel made no request for an immediate curative instruction nor did he ask the judge to include such an instruction in his final charge to the jury. Moreover, while the defendant now argues that, as a practical matter, we must view the statement as having been erroneously received in evidence, "he has not demonstrated that his defense was hurt by the late disclosure." *Commonwealth* v. *Cundriff*, 382 Mass. 137, 151 (1980). The defendant's psychiatric expert witness described the defendant as "manipulative" and as suffering from a psychosis characterized by the "sudden onset of a psychotic disorder of at least a few hours but no more than two weeks' duration." The Commonwealth did not exploit the statement to demean the defendant's defense; rather, it took the position that while the defendant was concededly mentally ill, he was nonetheless criminally responsible. We are satisfied that a substantial risk of a miscarriage of justice has not occurred. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

*Judgments affirmed.*

*Frank R. Herrmann* for the defendant.
*Francis X. Spina*, Assistant District Attorney, for the Commonwealth.